UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STONEY HARRISON,

                              Plaintiff,

                    v.

BISHME NELSON,
B.J. GABEL,
KEVIN BROWN,
AHMED MUHAMMAD, and
STEWART ECKART,

                              Defendants.
_____

                                                            REPORT
                                                              and
                                                      RECOMMENDATION

                                                      19-CV-151JLS(F)

APPEARANCES:          STONEY HARRISON, *Pro se*
                      88T1745
                      Wende Correctional Facility
                      P.O. Box 1187
                      Alden, New York  14004-1187

                      LETITIA A. JAMES
                      ATTORNEY GENERAL, STATE OF NEW YORK
                      Attorney for Respondents
                      KATHLEEN M. KACZOR
                      Assistant Attorney General, of Counsel
                      350 Main Street
                      Suite 300A
                      Buffalo, New York  14202

## **JURISDICTION**

        This case was re-referred to the undersigned by Honorable John L. Sinatra, Jr.

on November 4, 2021, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Defendants' motion for judgment on the pleadings filed October 21, 2021 (Dkt. 15).

## BACKGROUND

Plaintiff, an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), while incarcerated at Wende Correctional Facility ("Wende"), and proceeding *pro se*, filed a complaint (Dkt. 1) commencing this action on January 28, 2019, and a motion for leave to proceed *in forma pauperis* ("IFP") (Dkt. 2).  By Order filed November 14, 2019 (Dkt. 3), Plaintiff's motion to proceed IFP was granted, and Plaintiff's claims for money damages asserted against Defendants in their official capacities were dismissed with Plaintiff given 45 days to file an amended complaint, which Plaintiff filed on December 30, 2019 (Dkt. 4) ("Amended Complaint"), attaching numerous, unnumbered exhibits.  Plaintiff asserts against Defendants, employees of DOCCS, claims for violations of his First Amendment right to the free exercise of his religion and free speech, Fourteenth Amendment right to due process, and rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, based on Defendants' refusal to allow Plaintiff to wear his white shirt and bowtie other than while attending religious services.  Plaintiff seeks as relief for his claims declaratory and injunctive relief, as well as compensatory and punitive damages.  Defendants to this action include Wende Chaplain Bishme Nelson ("Nelson"), DOCCS Ministerial Program Coordinator Ahmed Muhammad ("Muhammad"), Wende Deputy Superintendent of Security Kevin Brown ("Brown"), and Wende Superintendent Stewart Eckert ("Eckert").

On April 10, 2020, Defendants moved to revoke Plaintiff's IFP status and dismiss certain claims. (Dkt. 8) ("Defendants' Motion to Revoke IFP").  On November 4, 2020, Plaintiff paid the court's filing fee.  In a Report and Recommendation filed October 6,

2021 (Dkt. 13) ("October 6, 2021 R&R"), the undersigned dismissed as moot Defendants' Motion to Revoke IFP insofar as Defendants sought revocation of Plaintiff's IFP status, and recommended granting the motion as to Plaintiff's claims for money damages pursuant to RLUIPA which does not create a private right of action against state officials in their individual capacities, nor a right to money damages against state officials in their official capacities.  October 6, 2021 R&R at 4-6.  On October 4, 2021, District Judge Sinatra adopted the October 6, 2021 R&R (Dkt. 17), and re-referred the matter to the undersigned.

On October 21, 2021, Defendants filed the instant motion for judgment on the pleadings (Dkt. 15) ("Defendants' Motion"), attaching Defendants' Memorandum of Law in Support of Motion to Dismiss Under Rule 12(c) (Dkt. 15-1) ("Defendants' Memorandum").  In opposition to Defendants' Motion, Plaintiff filed on November 12, 2021, a Reply (Dkt. 18) ("Plaintiff's Response").  Defendant did not file any reply in further support of their motion.  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED.


## FACTS[1]

At all times relevant to this action, Plaintiff Stoney Harrison ("Plaintiff" or "Harrison"), an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), was housed at Wende Correctional Facility ("Wende" or "the correctional facility").  Plaintiff, as a member of the Nation of Islam ("NOI"), was permitted to wear a white shirt and bowtie to NOI congregate worship

---

[1] Taken from the pleadings filed in this action.

services, but Plaintiff prefers to wear the white shirt and bowtie at all times, *i.e.*, at times other than congregate worship.

On January 12, 2018, Plaintiff was told he could only wear his white shirt and bowtie while attending congregate worship.[2]   That same day, Plaintiff filed with the Inmate Grievance Review Committee ("IGRC") an inmate grievance ("grievance").[3]   On January 26, 2018, a hearing was held on the grievance before the IGRC, which Plaintiff was unable to attend because he was in Special Housing Unit ("SHU"), and on January 29, 2018, the grievance was denied ("IGRC Decision").[4]   Plaintiff alleges he was told the Grievance Decision was "deadlocked."  Amended Complaint ¶ 4.  On January 30, 2018, Plaintiff appealed the IGRC Decision which was denied by Defendant Wende Superintendent Stewart Eckert ("Eckert") ("Superintendent's Decision")[5] on January 29, 2018.  On January 30, 2018, Plaintiff appealed the Superintendent's Decision to Central Office Review Committee ("CORC") which

At some unspecified time, Defendant Wende Chaplain Bishme Nelson ("Nelson") advised Defendant Wende Deputy Superintendent of Security Kevin Brown ("Brown"), about a memo ("memo") from Defendant DOCCS Ministerial Program Coordinator Ahmed Muhammad ("Muhammad") in Albany stating NOI members could only wear white shirts and bowties to congregate worship.  Plaintiff maintains he has not seen the memo, and the only relevant written document concerning attire for NOI members is found in a religious calendar which provides on page 27 that NOI members may bring to

---

[2] Plaintiff does not identify who told him he could not wear the white shirt and bowtie outside congregate worship.
[3] Dkt. 4 at 14.
[4] No copy of the Grievance Decision is in the record.
[5] No copy of the Superintendent's Decision is in the record.

congregate worship a bowtie, the Quran, a prayer rug, final call newspaper, books, video and the NOI Flag.  DOCCS Directive # 4202 ("Directive # 4202) pertaining to Religious Programs and Practice does not address which items may be worn by NOI members or when such items may be worn.

On January 25, 2018, Plaintiff's cell was searched during which Plaintiff was found in possession of several items of contraband for which an inmate misbehavior report ("IMR") was issued with a Tier III disciplinary hearing on the IMR held on January 26, 2019 ("Disciplinary Hearing").  Following the Disciplinary Hearing, Plaintiff was found guilty of violating several prison disciplinary rules ("Disciplinary Hearing Decision").  Plaintiff maintains the IMR was issued to retaliate against Plaintiff for filing the Inmate Grievance complaining about being denied the right to wear his white shirt and bowtie other than while attending congregate worship.

On an unspecified date, Plaintiff made a request pursuant to New York State Freedom of Information Law ("FOIL") for a copy of two letters and the memo Defendant Brown referenced as being prepared by Defendant Muhammad restricting NOI members to wearing white shirts and bowties only at congregate worship ("FOIL Request").  On March 15, 2019, Plaintiff challenged the Disciplinary Hearing Decision in an Article 78 proceeding ("Article 78 Proceeding") filed in New York Supreme Court, Albany County.  On April 17, 2019, CORC upheld the IGRC Decision ("CORC Decision").[6]  In the CORC Decision, it was noted that Plaintiff had been transferred from Wende to another, unspecified, correctional facility.  The Article 78 Proceeding was transferred to New York Supreme Court, Appellate Division, Third Department  which,

---

[6] Dkt. 4 at 15.

on April 18, 2019, issued a Memorandum and Judgment observing the New York

Attorney General had advised the Disciplinary Hearing Decision "has been

administratively reversed, all references thereto have been expunged from [Plaintiff's]

institutional record," with the mandatory surcharge refunded to Plaintiff's inmate account

and the petition dismissed because Plaintiff was in receipt of all relief to which he was

entitled.  *Harrison v. Venettozzi*, 96 N.Y.S.3d 917, 917 (3rd Dept. 2019).  By letter to

Plaintiff dated June 25, 2019 ("June 25, 2019 Letter"),[7] non-party Paula Knopp, a

DOCCS employee at Wende, advised Plaintiff that despite a diligent search, none of the

records responsive to Plaintiff's FOIL Request were located.


## DISCUSSION

### 1.    Judgment on the Pleadings

Defendants move pursuant to Fed.R.Civ.P. 12(c) ("Rule 12__"), for judgment on

the pleadings.  "'The standard for granting a Rule 12(c) motion for judgment on the

pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a

claim.'"  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021)

(quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)).  "'To survive a Rule

12(c) motion, [the plaintiff's][8] complaint must contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Hayden v.

Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (bracketed material in original)).  "'The

assessment of whether a complaint's factual allegations plausibly give rise to an

entitlement to relief ... calls for enough fact[s] to raise a reasonable expectation that

---

[7] Dkt. 4 at 16.
[8] Unless otherwise indicated, bracketed material has been added.

discovery will reveal evidence of illegal conduct.'" *Id.* (quoting *Lynch*, 952 F.3d at 75 (internal quotation marks omitted)). In making this assessment, all reasonable inferences must be drawn in the plaintiff's favor. *Id.* (citing *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). Like a motion under Rule 12(b)(6), a motion under Rule 12(c) may be filed before discovery is complete. *See* Fed. R. Civ. P. 12(c) (permitting motion "[a]fter the pleadings are closed—but early enough not to delay trial"). Nevertheless, "[u]ntil both parties have an opportunity to test their evidence at summary judgment or trial, we must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party." *Lively*, 6 F.4th at 301.

"'[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial.'" *Lively*, 6 F.4th at 301 (quoting *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019) (internal quotation marks omitted)); *see also Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (explaining that dismissal under Rule 12(c) is appropriate for self-defeating complaints—*i.e.*, complaints "whose allegations show that there is an airtight defense"). Accordingly, "where a 'question [of fact] is in dispute, it [is] improper for the district court to answer it on a motion for dismissal on the pleadings.'" *Id.* at 302 (quoting *Sheppard v. Beerman,* 18 F.3d 147, 151 (2d Cir. 1994); and citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2021) ("[J]udgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.")). A court thus "may consider undisputed allegations of

fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations." *Id.*

In considering a Rule 12(b)(6) motion, the Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face").  The factual allegations of the complaint "must be enough to raise a right to relief above the

speculative level on the assumption that all the allegations in the complaint are true."
*Twombly*, 550 U.S. at 570.

"In ruling on a 12(b)(6) motion, and thus on a 12(c) motion, a court may consider the complaint as well as 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.'" *Kalyanaram v. American Ass'n of University Professors at New York Institute of Technology, Inc.*, 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (quoting *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001)) (bracketed material in original). On a motion for judgment on the pleadings, "'a court may consider ... matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted; bracketed material and ellipses in original)).

In the instant case, Plaintiff's claims are asserted pursuant to 42 U.S.C. § 1983 ("§ 1983"), which permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of "rights, privileges, or immunities secured by the Constitution and laws of the United States." *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section 1983, however, "'is not itself a source of substantive rights.'" *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred' . . . ." *Id.* To succeed on a § 1983 claim, a plaintiff must establish the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the

Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Because Plaintiff's claims assert violations of the First Amendment and RLUIPA, § 1983 is the proper vehicle for asserting the claims.

Defendants argue in support of judgment on the pleadings that Plaintiff's claims against Defendants in their individual capacities are barred by qualified immunity, Plaintiff's Memorandum at 7-12, Plaintiff's claims for compensatory damages fail because Plaintiff has not pleaded the requisite physical injury, *id*. at 12-13, Plaintiff has failed to allege the requisite personal involvement by each Defendant with regard to each of the asserted § 1983 violations, *id*. at 13-18, and the allegations against Defendant Imam Nelson fail to support a retaliation claim. *Id*. at 18-22. Plaintiff's Response consists of a general denial of Defendants' arguments in support of judgment on the pleadings. Plaintiff's Response, *passim*. Defendants do not argue in further support of judgment on the pleadings. The court addresses each of Defendants' arguments in turn.

**2.    RLUIPA**

Plaintiff's RLUIPA claims should be dismissed because RLUIPA does not provide for a private cause of action for money damages against state official in their official or individual capacities. In particular, the Supreme Court has "held that sovereign immunity forecloses the availability of money damages as a remedy against states and state actors in their official capacities under RLUIPA." *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) (citing *Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) ("States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and

unequivocally includes such a waiver.")).  Plaintiff therefore cannot his sustain his RLUIPA claim for money damages against Defendants in their official capacities.

Nor can Plaintiff sustain his RLUIPA against Defendants in their individual capacities because the "RLUIPA does not provide a cause of action against state officials in their individual capacities."  *Gonyea*, 731 F.3d at 145.  *See also Tanvir v. Tanzin*, 894 F.3d 449, 465 (2d Cir. 2018) (observing "RLUIPA prohibits both the recovery of money damages from state officers sued in their official capacities and in their individual capacities." (citing *Gonyea*, 731 F.3d at 145)), *aff'd*, __ U.S. __; 141 S. Ct. 486 (2020).  Accordingly, Plaintiff is limited to recovering under RLUIPA only injunctive and declaratory relief against Defendants in their official capacities and Defendants' Motion should be GRANTED insofar as Plaintiff seeks other relief pursuant to RLUIPA.[9]

### 3.    Qualified Immunity

Defendants argue the doctrine of qualified immunity bars Plaintiff's individual-capacity claims because there was no clearly established law permitting incarcerated NOI adherents to wear a white shirt and bowtie at all times in prison.  Defendants' Memorandum at 7-12.  Plaintiff has not responded in opposition to this argument.

"Qualified immunity shields law enforcement officials from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware."  *Zalaski v.*

---

[9]  Although RLUIPA does not preclude Plaintiff from recovering injunctive and declaratory relief against Defendant's in their official capacities, as discussed below, *see* Discussion, *infra*, at 15-20, such claims are subject to dismissal because Plaintiff has failed to allege with regard to each Defendant the requisite personal involvement for § 1983 liability, thus rendering the claims for injunctive and declaratory relief as against Defendants in their official capacities futile.

*City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), and *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).  "An officer is entitled to qualified immunity if '*any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.'"  *Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 70-71 (2d Cir. 2018) (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (italics in original)).  A qualified immunity analysis asks two questions including whether "the facts show that the office's conduct violated plaintiff's constitutional rights," and, if so, whether "the right was clearly established at the time of defendant's actions."  *Zalaski*, 723 F.3d at 388 (citing *al-Kidd*, 563 U.S. at 735, and *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)).  Courts are no longer required to sequentially answer these two questions; rather, it is particularly appropriate to address the second question first where the first question "turns on difficult or novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the challenged conduct 'was not objectively unreasonable in light of existing law.'"  *Id.* at 389 (quoting *Coolick v. Hughes*, 699 F.3d 211, 219-20 (2d Cir. 2012), and citing *al-Kidd*, 563 U.S. at 735).

"'[T]he matter of whether a defendant official's conduct was objectively reasonable, *i.e.*, whether a reasonable official [in the defendant's position] would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact.'"  *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018) (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (bracketed material on original).  Nevertheless, "'[q]ualified immunity protects officials from liability for civil damages as long as their conduct does not violate *clearly established statutory*

*of constitutional rights of which a reasonable person would have known.*'"  *Gonzalez v. Morris*, 824 Fed.Appx. 72, 74 (2d Cir. 2020) (italics added) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010)).  "To determine whether a right was clearly established, we consider 'whether the right in question was defined with reasonable specificity,' 'whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question,' and 'whether under preexisting law a reasonable defendant officer would have understood that his or her acts were unlawful.'"  *Barnes v. Furman*, 629 Fed.Appx. 52, 55-56 (2d Cir. Oct. 22, 2015) (quoting *Dean v. Blumenthal*, 577 F.3d 60, 68 (2d Cir. 2009)).

Significantly, in *Gonzalez*, the inmate plaintiff who practiced Santeria brought a claim under the First Amendment to be allowed to wear more than one strand of religious beads around his neck while confined in the prison's special housing unit and to use matches to perform burn offerings for worship.  *Gonzalez*, 824 Fed.Appx. at 74. The Second Circuit affirmed the District Court's granting summary judgment in favor of the defendant prison officials on the First Amendment claim based on qualified immunity because the *pro se* inmate plaintiff did not point to any case from the Second Circuit or the Supreme Court "clearly establishing that an inmate has a First Amendment right to wear more than one strand of religious beads in the SHU or to use matches or a lighter to burn offerings, and we have identified none."  *Id*.  The Second Circuit therefore agreed that the defendants were entitled to qualified immunity on the First Amendment claim.  *Id*. (citing *Redd v. Wright*, 597 F.3d 532, 536-38 (2d Cir. 2010) (affirming District Court's granting summary judgment based on qualified immunity on *pro se* inmate's §

1983 claims alleging violations of RLUIPA where the asserted right was not clearly

established by either the Second Circuit of the Supreme Court).

Similarly, in the instant case, Plaintiff fails to reference any action from either the

Second Circuit or the Supreme Court "clearly establishing" that Plaintiff has a right

under the First Amendment or RLUIPA to wear a white shirt and bowtie at any time

other than while attending NOI congregate worship.  Accordingly, Defendants are

entitled to qualified immunity on Plaintiff's claims.  Defendants' Motion should be

GRANTED with Plaintiff's § 1983 claims DISMISSED against Defendants in their

individual capacities based on qualified immunity.

## 4.     Compensatory Damages

Defendants argue Plaintiff's claim for compensatory damages in the amount of

$ 250,000 against each Defendant fails because no physical injury is alleged as

required.  Defendants' Memorandum at 12-13.  Plaintiff's Response does not address

this argument.

Pursuant to 42 U.S.C. § 1997e(e) ("§ 1997e(e)") "'[n]o federal civil action may be

brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of physical injury.'

That provision bars recovery of compensatory damages for mental and emotional

injuries, absent physical injury, in § 1983 actions."  *Nash v. McGinnis.* 2008 WL

4898999, at *6 (W.D.N.Y.2008) (quoting 42 U.S.C. § 1997e(e)).  "'Courts have strictly

construed this requirement, barring claims by prisoners who demonstrate solely

emotional or mental injury and barring physical injury claims where the injury alleged is

*de minimis*.'"  *Abdur–Raqiyb v. Erie County Medical Center,* 536 F.Supp.2d 299, 304

(W.D.N.Y.2008). "Section 1997e(e) applies to all federal civil actions including claims alleging constitutional violations. Section 1997e(e) is a limitation on recovery of damages for mental and emotional injury in the absence of or showing of physical injury, but does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002). *See also Amaker v. Goord*, 2015 WL 3603970, at * 1 (W.D.N.Y. June 5, 2015) (holding § 1997e(e) bars awarding compensatory damages for violations of religious rights under the First Amendment unaccompanied by any physical injury).

Accordingly, Defendants' Motion should be GRANTED as to Plaintiff's request for money damages.

## 5.    Personal Involvement

Defendants argue Plaintiff's claims should be dismissed because Plaintiff has failed to allege each Defendant was personally involved in the asserted First Amendment and RLUIPA violations. Defendants' Memorandum at 13-18. Plaintiff has not responded in opposition to this argument.

"'It is well settled in this circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite' to a section 1983 claim." *Delee v. Hannigan*, 729 Fed.Appx. 25, 31 (2d Cir. 2018) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted)). Before the Supreme Court decided *Iqbal*, supervisory liability claims for § 1983 claim were analyzed according to the framework set forth in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), specifically providing that

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

The Second Circuit recently clarified that following *Iqbal*, "there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachman*, 983 F.3d 609, 618-19 (2d Cir. 2020).  Relevantly, "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary," and "[t]he violation must be established against the supervisory official directly."  *Id.* (quotations and citations omitted).

### A.    Defendant Eckert

Plaintiff's § 1983 claim against Defendant Eckert is that Eckert, as Superintendent of Wende, could have, but did not, overturn the IGRC Decision with regard to Plaintiff's grievance.  Amended Complaint at 9, ¶ 4.  Failing to correct another officer's violation does not plead personal involvement sufficient to establish § 1983 liability; rather, after *Iqbal*, the "active conduct" standard necessary to impose § 1983 liability on a supervisor requires the supervisory official either directly participate in the alleged constitutional violation or create a policy or custom under which the alleged unconstitutional practices occurred, *i.e.*, only the first and part of the third categories of

16

supervisory liability identified in *Colon* survive.  *Tangreti*, 983 F.3d at 617 n.4 (citing

cases).  Since *Tangreti* was decided, courts within the Second Circuit repeatedly have

dismissed claims based on an asserted notification to a supervisory official of an alleged

wrong by way of a letter, grievance, or appeal of a disciplinary action.  *See*, *e.g.*, *Smart*

*v. Annucci*, 2021 WL 260105, at * 5 (S.D.N.Y. Jan. 26, 2021) (dismissing *pro se*

complaint alleging defendants, both high-ranking prison officials who were alleged to

have failed to act on the plaintiff's complaints, because such allegations did not support

an inference that the defendants, through their own individual actions, violated the

Constitution, stating "[f]ailing to correct another officer's violation does not suffice" to

establish a supervisor's direct violation of a plaintiff's constitutional rights).   Moreover,

"[i]t is well-established that a prison inmate has no constitutional right of access to an

internal grievance process, or to an investigation of his grievance that he deems

adequate."  *James v. Poole*, 2013 WL 132492, at *5 (W.D.N.Y. Jan. 9, 2013) (citing

cases).  Thus, the denial of an inmate's grievance has repeatedly been held insufficient

to establish personal involvement in the alleged underlying constitutional violation.  *See*,

*e.g.*, *Logan v. Graham*, 2021 WL 4440344, at * 5 (N.D.N.Y. Sept. 28, 2021) (dismissing

inmate plaintiff's claim that defendant, as inmate grievance hearing officer, was not

personally involved in the alleged constitutional deprivation).

　　　　Plaintiff therefore has not pleaded a plausible § 1983 claim against Eckert based

on Eckert's sustaining the IGRC Decision, and Defendants' Motion should be

GRANTED with the Amended Complaint DISMISSED with regard to Eckert.

**B.    Defendant Nelson**

Plaintiff alleges Defendant Nelson advised Defendant Brown that Defendant Muhammad called Wende Correctional Facility from Albany and stated NOI members could wear white shirts and bowties only when attending congregate worship, Amended Complaint at 9, ¶ 2, attributing such information to a memo written by Muhammad, *id*. at 8, ¶ 7, causing Brown to issue another memo with the same information.  *Id*. at 9, ¶ 3. According to Defendants, Plaintiff is seeking to hold Nelson "liable for communicating among supervisory staff."  Defendants' Memorandum at 16.  Plaintiff has not responded in opposition to this argument.

It is well-settled that "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985), and citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  Significantly, a § 1983 defendant may not be held liable simply because he held a high position of authority.  *Wright*, 21 F.3d at 501.  Further, the Second Circuit has held that mere communications about a policy concerning religious practice is insufficient to establish a deprivation of the right to the free exercise of religion.  *See Gill v. Tuttle*, 93 Fed.Appx. 301, 302 (2d Cir. 2004) (affirming District Court's granting of summary judgment in favor of defendant DOCCS employees who "merely communicated" a policy regarding whether religious "gatherings" were considered "meetings" or "services" for the purpose of determining whether law library call-outs superseded the gatherings).

As such, Defendants' Motion should be GRANTED based on Plaintiff's failure to plausibly plead Defendant Nelson personal involvement in the alleged § 1983 claims.

### C.    Defendants Muhammad and Brown

Plaintiff alleges Defendant Muhammad called the correctional facility and advised NOI adherents could wear white shirts and bowties only to congregate worship, Amended Complaint at 9 ¶ 2, and that Brown distributed a memo advising the NOI adherents they were so restricted in wearing white shirts and bowties.  *Id*. ¶ 3. Defendants argue such allegations are insufficient, under both *Iqbal* and *Tangreti*, to plead a plausible claim against either Defendant Nelson or Brown.  Defendants' Memorandum at 17-18.

As discussed above, Discussion, *supra*, at 18, mere communications about a policy concerning religious practice is insufficient to establish a deprivation of the right to the free exercise of religion.  *Gill*, 93 Fed.Appx. 302.  Because Plaintiff asserts no other claims against Defendant Nelson and Brown, Plaintiff has failed to plead a plausible § 1983 claim against such Defendants.

Defendants' Motion thus should be GRANTED with regard to Defendants Nelson and Brown.

### 6.    Retaliation

Defendants argue Plaintiff's allegation that Defendant Nelson retaliated against Plaintiff for filing the grievance by making a fictitious inmate misbehavior report leading to the Disciplinary Hearing following which Plaintiff was sentenced to SHU, fails to state a plausible retaliation claim.  Defendants' Memorandum at 18 (citing Amended Complaint at 10, ¶ 6.  Plaintiff's Response does not discuss this point.

A copy of the January 26, 2018 IMR issued following the search of Plaintiff's cell is attached to the Amended Complaint.  *See* Dkt. 4 at 17.  The signature on the IMR shows it was authored by one "R. Fisher" and the narrative included on the IMR described the search of Plaintiff's cell was conducted by "CO T. Wright."  *Id*.  Another corrections officer, whose name is illegible but is not "Nelson"[10] served Plaintiff with the IMR.  *Id*.  Accordingly, Plaintiff has failed to plausibly allege Nelson was personally involved in issuing the IMR against Plaintiff to retaliate against Plaintiff for filing the grievance.  *See Hernandez v. Goord*, 312 F.Supp.2d 537, 548 (S.D.N.Y. 2014) (dismissing specific retaliatory claims against defendants for whom the allegations failed to connect with any adverse action).

Defendants' Motion should be GRANTED with regard to the retaliation claim asserted against Nelson.

**6.    Dismissal with Prejudice**

Although dismissal of a *pro se* plaintiff's claims for failure to state a claim is generally without prejudice and with leave to replead, "[w]here it appears that granting leave to amend is unlikely to be productive, it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Here, the problems with Plaintiff's claims, as pleaded, are substantive, including Defendants' entitlement to qualified immunity, and Plaintiff's failure to allege personal involvement with regard to Defendants Brown, Eckert, Muhammad, and Nelson, such that further pleading cannot cure them and would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112

---

[10] The signature of the corrections officer who served Plaintiff with the IMR appears to be "M. H_ _ ston," but in any event, does not match up with any combination of the letters in Defendant Bishme Nelson's name.

(2d Cir. 2000) (affirming dismissal of *pro se* plaintiff's claim for failure to state a claim with prejudice and without leave to replead where even a liberal reading of the complaint failed to suggest plaintiff had merely inadequately or inartfully pleaded and plaintiff, speaking through counsel on appeal, suggested no new material that could be pleaded to sufficiently reframe the claim, such that repleading would be futile). Accordingly, the dismissal of Plaintiff's claims should be with prejudice and without leave to replead.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion (Dkt. 15), should be GRANTED, and the Amended Complaint DISMISSED with prejudice and without leave to amend.  The Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:         August 23rd, 2022
              Buffalo, New York

21

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and to the attorneys for the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      August 23rd, 2022
            Buffalo, New York

22